20-10350 Antonio Rancher v. Florida Department of Corrections Mr. Kastorf, I know you're your court appointed as well so again we want to thank you very very much for your service to Mr. Rancher and to the court we really do appreciate it. Thank you, I was privileged to be appointed by one of my co-clerks when I clerked for the Eleventh Circuit who is now on the trial both very proud and not particularly young anymore. Well that's happening to all of us but we certainly couldn't do our work without attorneys taking time out of their busy schedules to work on these cases and again like the attorneys before you in the couple of cases we really are appreciative. May it please the court, my name is Kurt Kastorf and I represent the appellant Antonio Rancher. This case concerns the compounding effects of defense counsel's failure to use prior inconsistent statements to cast doubt on whether the appellant made two statements suggestive of premeditation. Because these statements were by far the most compelling evidence of premeditation and appellant's counsel failed to present compelling rebuttal evidence, Mr. Rancher did not receive effective assistance of counsel. The first statement was if I the state featured this alleged statement at the beginning of its opening statement and the beginning of its closing argument and yet now before the court argues that whether that statement was made is not necessarily critical to the outcome of its adjudication. A point belied by the fact that it was prominently featured as a cornerstone of their presentation to the jury. That was Sneed who made that state that testimony about that statement at trial? So there were two witnesses who testified at trial as to that statement. The first was Mr. Sneed and before the trial, before the district court, Mr. Rancher presented an argument that Mr. Sneed was inadequately impeached. What the district court said on as to that witness was there was so much other evidence of impeachment of Mr. Sneed that the impeachment was effectively obtained and there was no ineffective assistance of counsel and this court has not requested review of that particular question. Mr. Kastorf, is it my understanding that there was absolutely no evidence collaterally presented in this case? Collaterally? Everything the court ruled on came out of the trial transcript? Correct. I assume they took depositions in this case pre-trial? So the evidence that was available in the record of this case was pre-trial was witness statements of the... That were discovered pre-trial, all of this? Correct. So there were contemporaneous witness statements taken of each of the witnesses relevant here and Mr. Rancher's argument before the district court was that the contemporaneous witness statement from Mr. Sneed contradicted his trial testimony. The defense counsel attempted to present that argument. Mr. Sneed was very evasive and couldn't be pinned down on it. Defense counsel eventually moved on and Mr. Rancher suggested that was ineffective of counsel because he never got Mr. Sneed to admit that he had been inconsistent. What the court said on that point is there was so much other evidence of Mr. Sneed's evasiveness that that was not necessarily critical. The reason why I'm bringing this all up, although the court has not asked to review Mr. Sneed's statements, is because Mr. Sneed, frankly, we think the district court got it right. Mr. Sneed was an extremely incredible witness and the specific claim he made was that this statement was made at 10 o'clock inside of a night club and everyone around him could have heard it. He was not a credible witness and one would think that if everyone around him could have heard it, the state would have been able to present at least one other witness who heard that statement. That was in the facility, the statement that Sneed talked about, wasn't it? Correct. Sneed is quite clear that that statement was made around 10 p.m. inside of the club and that it was said loudly and repeatedly. How many people were in there, do we know? It sounds like not a huge group. Seven or eight or something like that? Yeah, I believe between six or seven, I think is what the record says. But it was not a huge group. It's described as a nightclub in the record, but it's a very small establishment. One would think that if Mr. Sneed came across as a non-credible witness and asserted that everyone in the club would have heard the claim, the state would have been able to produce somebody else who asserted the claim. And that's why it's critical that Ms. Atkins, who also asserted at trial eventually that she had heard this statement made, be effectively impeached. By way of background, during her contemporaneous witness statement, she referenced that somebody had been quoted as saying that and that she had a general understanding of the statement being uttered. She did not specifically say in her pre-trial witness statement that she personally had heard it. She also said in her witness statement that she was never outside of the club, that when she got there, she went directly into the building. She did not see the victim or Mr. Rensher before then. The first time she saw them was inside of the club. Was outside? Was inside. Yeah, she didn't see them outside. Correct. She said she arrived there, went directly into the club, saw them inside of the club. At trial, she initially said she did not recall hearing that statement, said it twice. And then when the prosecutor appeared to be getting ready to impeach her with her prior statement, which would not have been proper impeachment because her prior statement does not say she personally... Or she declared a hostile witness? I don't believe so. I believe that the prosecutor stood up. He may not have. I apologize. I'm not certain whether the prosecutor framed it as impeachment or as recollection refreshed, but stood up with the document of the prior statement, asked her the question again. At this time, she agreed that she had heard that statement. She saw the statement in his hand? Correct. And so Mr. Rensher submits that there's a fair amount of circumstantial evidence that she may have never heard the statement. And then importantly, while she did say she personally heard the statement on cross-examination, she also insisted that heard that statement outside of the club. The defense counsel did not impeach on the fact that she very clearly said in her prior witness statement she was never outside of the club and that she never saw the defendant and the victim outside of the club. And therefore, there's a clear contradiction between when she could have heard the statement. In addition, although there's some inconsistent testimony about when she got there, she at one point indicates she got there around 3.30 p.m. At another point around 5 p.m., Mr. Sneed says that the statement occurred at 10 p.m. So on the best interpretation of the facts, Ms. Atkins now says that she heard a statement outside of the club despite never having been outside of the club and that meaning that she heard the statement five hours difference temporally apart from when Mr. Sneed heard the statement. The jury did not hear any of this, and had the jury heard this, they may well have concluded that Ms. Atkins did not in fact hear the statement and there was not corroboration of Ms. Sneed's frankly incredible account. Can we talk about Mr. Knight? Yes, Ms. Knight... Let me see if I have it straight so you can help me with all these different statements and when they were made. So as I understand it, Mr. Knight said that he heard Mr. Rancher say that he was going to kill you blank once he started the stabbing, but then he also had said that she wasn't going anywhere before the stabbing. Is that correct? Those are the two statements that sort of lead to the impeachment claim? Yeah, those are the two versions of accounts. So Ms. Knight in her statement made... Ms. Knight, I'm sorry. Ms. Knight in her statement at the time of the events said that what happened is Ms. Daly, the victim, was drunk, she was walking her home, Mr. Rancher exited the club, they saw him approaching them, and he said you're not going anywhere. Then he pushed her to the ground and pulled out a knife. At that point, Ms. Knight ran away and ran back to her house and has no idea what happened after that point. At trial, she gave a different statement. She said that they didn't see Mr. Rancher, he suddenly pushed down and was on top of the victim, started stabbing her, said I'm going to kill you. Now, those are clearly inconsistent statements and in a way that's particularly relevant to premeditation because, of course, when they were walking away from the club, Mr. Rancher's statement you're not going anywhere could be interpreted as an attempt to detain her to try to talk with her more. There's plenty of evidence that the two were arguing earlier about a breakup and it's at least plausible or a jury could have reasonably concluded that at that moment Mr. Rancher's original intent in approaching that situation was to still try to talk her out of breaking up with him. Now, on the issue of strickling prejudice, what does Florida law say about circumstantial evidence of premeditation? Can premeditation be inferred by a jury based on actions alone or does the jury need to hear statements of the defendant indicating his or her premeditation to commit a crime? So, I believe the state cites to a case that they say that a sufficient amount of circumstantial evidence of intent can allow an inference from intent. So, for example, where there's a particularly violent crime, repeating stabbings and some facts that are arguably present in this case, it would be permissible for a jury to But, of course, the question is not whether a jury conceivably could have reached the same verdict, it's whether there's a meaningful possibility that the jury would have reached a different verdict had they known that these statements were in fact different. Mr. Kastoff, an instruction on first degree murder was delivered to the jury as I understand it. Yes. Okay, were there lesser included instructions also? Your Honor, I confess I actually need to double check. For example, second degree or manslaughter, was that instructed to the jury? Your Honor, I confess I need to recheck the record. The element of premeditation went to the jury in the instruction on murder. Correct, Your Honor, and I do think there's some, I do think there's some question under Florida law whether even the statement where Mr. Rensher was, if Mr. Rensher had been straddling or what he said, I'm going to kill you, whether he still could have formed intent at that point. I guess I'm, here's the question I'm getting to. Let's assume the jury could have found that he didn't make the statements as alleged, but he was guilty of second degree or manslaughter, but wasn't charged. What effect does that have on his collateral proceeding? It strikes me that the fact that he could have been acquitted on the charges alleged, namely a charge requiring premeditation, entitles him to a new trial. I confess I don't know what, whether the state would have the option on the retrial of representing a different lesser included claim, but the fact that the claim on which he was convicted requires premeditation. If we granted, really, if the verdict was set aside, I assume that the case would be retried and there would be lesser included offenses charged, I suppose. I assume the state would move to include a lesser included offense, given that it seems to me that that's a more plausible interpretation of the case. Whether they have the procedural right to do that, I think would be a dispute between the state and his new counsel at trial. All right. Thank you very much. You've saved your time for rebuttal. Mr. Napodano? Yes. May it please the court, Luke Napodano, on behalf of the respondent. Did you answer the question I asked about it? Yes, I did, yes. About lesser included offenses. Right, right, right. Mr. Rancher at trial admitted that he would be a miscarriage of justice if they did not return a verdict of manslaughter. So the verdict form had three choices. First degree, premeditated. There were lesser included offenses. Second degree. Is that what you're saying? Yes. Depraved mind and manslaughter. What, second degree and manslaughter? Yes. And he argued that he was guilty of manslaughter, that he killed daily in a heat of passion, and that it was not premeditated. So Mr. Rancher here argues that defense counsel did not impeach Ms. Atkins and Ms. Knight on their inconsistencies. But counsel in this case made a strategic decision to attack their credibility generally, that they were incredible witnesses and they should not be believed. First, trial counsel directly addressed the issue of whether Atkins made this statement, if I can't have her, no one else could, in cross-examination. She asked, is this something you heard or is that something you heard somebody else say they heard? Atkins responded, I heard it. It was, I heard it because it was more than me heard it. Trial counsel asked, but did you hear it? And Atkins responded, yes. In closing, defense counsel got up and said, Ms. Atkins made her statement to Detective Gonzalez 19 days after the incident, and it's clear that she may have heard, you know, talked to other people in the community about this case. She had three weeks to talk to others under the tree and hear about what other people thought had happened. Ms. Atkins perhaps wasn't intentionally lying to you, but her memory is shaped to fit the story she believes happened. So we get into this, you know, argument here about whether she heard the statement or she didn't. Your contention about counsel's performance as to Ms. Knight was that he made a valid litigation decision to impeach her with mental health issues as opposed to honing in on the prior inconsistent statements, and you think that that's sufficient? Yes, for Ms. Knight as well, yes. Ms. Knight had mental health issues. She had, she was on medication, but not on her medication at trial. That was brought out on cross-examination or direct? Yes, yes. On cross? She had memory issues. She was, she was frankly not very cooperative at trial. She was wandering around that sidebar. Defense counsel got up in closing and said this woman shouldn't be believed. She, at one point, she blurted out that Mr. Rancher was on probation when this happened and the judge had to stop and tell the jury that was a lie. And so, so counsel made a decision to say, hey, you can't believe this woman. I mean, I would point out, I think one judge, I think it was Judge Jordan, asked whether premeditation can be, can be proven through circumstantial evidence. In that case, it was Holton v. State, 573-772-284. And here, while, while the state did rely on the, if I can't have anyone else's good statement, that was not the only evidence supporting premeditation. We have Mr. Sneed's testimony that, that Rancher said he was going to kill Daly, or at least in his statement to Goncalves, that he was going to hurt Daly. I mean, either one is evidence that, it's direct evidence that Mr. Knight, I mean, Mr. Rancher was going to do something to Ms. Daly. Daly was, you know, 40 feet away from, from this nightclub when Rancher came out and attacked her, and said something to her. He said, either I'm going to kill you or, or don't stop, come back here and talk to me, you know. And either one shows that even if you rely on the, you aren't going nowhere, as soon as he said that, he pushed her down and stabbed her 39 times. And that evidence is, is direct evidence that, that Mr. Rancher, you know, had a premeditated attempt to hurt, to kill or hurt or kill Ms. Daly. So. Well, let's, let's talk about Atkins, for example. So, what was the impeachment with her? Just that he, he impeached her with her felonies and probationary status? He impeached her in general. She had four felony convictions, was on probation at the time of trial, had sobriety issues, and, and considered the victim, Ms. Daly, as a sister. And so, defense counsel argued that, that, you know, she was biased in favor of Daly, and her testimony should not be believed. I would point out that this, the standard here that Mr. Rancher has to meet is, is very difficult. Not only must he show that, that the strategic decision here was, was so patently unreasonable that no attorney would have chosen it, but that the state court's finding that it was reasonable was unreasonable. And similarly for prejudice, it must show that there was a reasonable probability that the proceedings would have been different if Mr. Rancher's attorneys made these points and, and more specifically, that the state court was unreasonable in finding that, that there was no reasonable probability. And Mr. Rancher's cannot meet that standard under these facts. So, if there are no further questions, I would ask that you affirm the ruling of the district court. All right, thank you very much. May it please the court, I'd like to address the notion that there were valid strategic considerations for the choice of the defense counsel made, and I'd issue three responses. The first is that is not the reasoning used by the district court in denying relief. The district court seems to acknowledge that those statements should have been addressed, but found that they were simply cumulative with testimony that already existed from Sneed. We believe that logic does not make sense because the district court had already found that Sneed would himself, the credibility had been attacked, and so it's sort of bootstrapping to say that you can bolster one non-credible witness with another. But even the district court did not seem to credit the notion that the state had valid strategic consideration, that the defense counsel had valid strategic considerations for not impeaching. The second point is that the notion that there are acceptable strategic considerations is belied by the way that state conducted its case. The first statement that, if I can't have you, nobody can, was featured prominently at the beginning of the opening statement, beginning of the closing statement. It was the absolute core of the prosecution's case, and the possibility that it was not said at all is a fundamental element of the defense, far more reasonably persuasive than the notion that the witnesses might generally have a history of substance abuse. And the third factor is that, you know, this court has already dealt with situations in which there was some general impeachment of witnesses, but counsel failed to point out glaring inconsistencies in testimony. For example, this is a strategic basis for failing to point out glaring inconsistencies in important testimony, and here there are glaring inconsistencies. For example, defense counsel, while defense counsel did attempt to argue with Ms. Atkins about whether she had heard the statement, defense counsel did not point out that at trial she said she heard the statement outside the club, and in her pre-trial statement she said she was never outside the club. That is a glaringly inconsistent statement that would serve to significantly undermine her credibility. As for the second statement, there is a world of difference in a case where the fundamental question is premeditation between the statement, I am going to kill you, and you're not walking away. One of them is a direct confession of premeditated statement. The other one is subject to multiple interpretations. Those are glaring inconsistencies, and they are glaring inconsistencies on a fundamental element of the state's burden of justice. Our last case today is number 20-110.